# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WhitServe LLC,<br>        Plaintiff and Counterclaim Defendant, | ) ) ) | |
| v. | ) ) | |
| Computer Patent Annuities North America, LLC<br>    and Computer Patent Annuities LP,<br>        Defendant and Counterclaim and<br>        Third-Party Plaintiffs, | ) ) ) ) ) | Civil Action No. 3:04CV1897 (CFD)<br><br>November 14, 2005 |
| v. | ) ) | |
| Wesley W. Whitmyer, Jr. and<br>    St. Onge Steward Johnston & Reens LLC,<br>        Third-Party Defendants. | ) ) ) ) | |

REDACTED

## MEMORANDUM OF LAW IN SUPPORT OF
## CPA'S MOTION FOR
## SUMMARY JUDGMENT OF NONINFRINGEMENT

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS ......................................................................................2

    A.  Technological Background of Client/Server Architecture ...........................2

        1.  Computer Servers and Client Computers Are Separate Devices.................2

        2.  Web Pages Are Provided by Computer Servers ...........................................3

    B.  The CPA Direct Server System Is Located Outside the United States...................4

        1.  CPA Direct Is Implemented by a Computer Server......................................4

        2.  All Hardware and Software Components of the CPA Direct Computer Server Are Located Outside the United States ..........................4

        3.  The CPA Direct Computer Server System Is Controlled and Used by CPA LP Outside the United States ...............................................6

    C.  The Patented Invention Defined by Plaintiff's Claims Is Directed to a Computer Server, Not a Client Computer....................................................6

III. LEGAL ARGUMENT .........................................................................................12

    A.  Summary Judgment Is Appropriate Because Plaintiff's U.S. Patents Cannot Prohibit Activities Relating to CPA Direct in the United Kingdom ....................................................................................................12

    B.  CPA Cannot Infringe Because Section 271 Defines Infringement as Requiring Specific Acts Performed in the United States.......................13

    C.  No Prohibited Making, Selling, or Importing Under Section 271 Has Occurred in the United States ....................................................................14

    D.  No Prohibited Use of the Patented Invention Under Section 271 Has Occurred in the United States ....................................................................16

        1.  None of the Process Claims Are Infringed Since Every Step Is Not Performed in the United States ...........................................................16

        2.  None of the Apparatus Claims Are Infringed .............................................18

IV. CONCLUSION....................................................................................................26

# TABLE OF AUTHORITIES

## CASES

35 U.S.C. § 154(a) ................................................................................................ 12

35 U.S.C. § 271(a) ......................................................................................... passim

35 U.S.C. § 271(g) ................................................................................................ 15

*AG v. Housey Pharmaceuticals*, 340 F.3d 1367, 1377 (Fed. Cir. 2003) ........................... 15

*Akamai Technologies Inc. v. Cable & Wireless Internet Services Inc.*, 344 F.3d 1186
(Fed. Cir. 2003) ................................................................................................... 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) ..................................... 12

*Boesch v. Graff*, 133 U.S. 697, 703 (1890) ............................................................ 13

*Brown v. Duchesne*, 19 How. 183, 195 (1856) .......................................................... 13

*Decca Ltd. v. United States*, 544 F.2d 1070, 1081-83 (Ct. Cl. 1976) ............................. 21

*Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972) ............................... 13

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1266 (Fed. Cir. 2004) ........... 21

*Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 198 F. Supp. 2d 11 (D.
Mass. 2002) ........................................................................................................ 23

*Hughes Aircraft Co. v. United States*, 29 Fed. Cl. 197, 243 (1993) ............................. 23

*Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ........................ 18

*MAGICorp v. Kinetic Presentations, Inc.*, 718 F. Supp. 334, 341-42 (D.N.J. 1989) ............... 22

*Netword LLC v. Centraal Corp.*, 242 F.3d 1347, 1351 (Fed. Cir. 2001) ............................ 21

*North American Philips Corp. v. American Vending Sales Inc.*, 35 F.3d 1576, 1579 (Fed.
Cir. 1994) ........................................................................................................ 22

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) .................... passim

*Resonate Inc. v. Alteon Websystems Inc.*, 338 F.3d 1360, 1361-62 (Fed. Cir. 2003) ................ 3

*Rothschild v. Ford Motor Co.*, 2 F. Supp. 2d 941, 946-47 (E.D. Mich. 1998) ...................... 18

*Wahpeton Canvas Co. Inc. v. Frontier Inc*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ............. 20

**STATUTES & RULES**

Fed. R. Civ. P. 56(c) ................................................................................................ 12

35 U.S.C. § 154(a) .................................................................................................. 12

35 U.S.C. § 271(a) ............................................................................................ *passim*

35 U.S.C. § 271(g) .................................................................................................. 15

## I.    INTRODUCTION

Although patent cases can be complex, this motion by defendants Computer Patent Annuities LP ("CPA LP") and Computer Patent Annuities North America, LLC ("CPA NA") is based on unusually straightforward facts and law.

In the patents of plaintiff WhitServe LLC ("WhitServe"), a specific device is described and claimed.  In particular, the patents' claims, drawings, specifications[1], and prosecution histories[2] all are directed at a computer "server" as opposed to a "client" computer.  But the only "product" of the CPA defendants specifically accused of infringement in plaintiff's complaint is CPA Direct, which is a computer server located in the United Kingdom.  (Plaintiff's First Amended Complaint dated Jan. 10, 2005 at § 10.)

Under 35 U.S.C. § 271, the only acts that can constitute infringement of a U.S. patent are acts that occur within the United States.  Therefore, since each and every hardware or software component of the CPA Direct computer server is located in the United Kingdom, there cannot be infringement of plaintiff's U.S. patents as a matter of law.  *See, e.g.*, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005).  Accordingly, the CPA defendants are entitled to summary judgment of noninfringement.

---

[1] The "specification" of a patent refers to its text.  The term "specification" is interchangeable with the term "written description."  The drawings can also be viewed as a portion of the specification, although they are often referred to separately.

[2] "Prosecution history" is a term patent attorneys use to refer to the administrative record kept by the U.S. Patent & Trademark Office ("PTO") of the process by which an applicant obtained a patent from the PTO.

## II.     STATEMENT OF FACTS

### A.     Technological Background of Client/Server Architecture

Computer networks, such as the Internet, can be arranged in various "architectures" that take into account the different needs and capabilities of service providers and their clientele. In order to efficiently perform services for many clients, a client/server architecture is often implemented by service providers.

In this architecture, a service provider at a particular location puts a computer server into operation. At that server location, the service provider performs computer processes for its clientele. The computer server and client computers have access to the same network to enable information transfers between the service provider and its customers.

### 1.     Computer Servers and Client Computers Are Separate Devices

Computer servers and client computers are separate devices on a network and perform different functions. In general, the relationship between a computer server and client computer over the Internet is illustrated by the following two drawings, which are Figs. 1 and 2 from prior art U.S. Patent No. 5,530,852 to Meske:



Fig. 1



Fig. 2

On a personal computer, the computer programs that are run may include a "client," which is an application that relies on a "server" to perform some operations. (*See* Declaration of Matthew Hives in Support of CPA's Motion, ¶ 6.) For example, an email client is an application that enables sending and receiving of emails. (Hives Decl. ¶ 7.) A server is an application running on a computer capable of responding to a number of clients, *i.e.*, a very large computer, capable of supporting a large number of users simultaneously. (Hives Decl. ¶ 8.) An email server, for example, controls serving of emails to and from clients. (Hives Decl. ¶ 9.) A database server monitors and controls database tasks. (Hives Decl. ¶ 9.)

CPA LP makes use of a client/server architecture to act as a service provider for clients anywhere in the world. (Hives Decl. ¶ 10.) The computer resources utilized by CPA to provide CPA Direct have much more extensive and sophisticated capabilities and are referred to as computer servers. (Hives Decl. ¶ 39.) In contrast, CPA's clients can have ordinary personal computers with Internet access to exchange data with CPA LP relating to CPA Direct. (Hives Decl. ¶ 54.) By using the well-known client/server architecture, CPA is able to implement CPA Direct by putting into service a computer server system into service that is located entirely outside the United States. (Hives Decl. ¶¶ 31, 40, 41.)

## 2.    Web Pages Are Provided by Computer Servers

On the Internet, it is common for ordinary users of personal computers to access the Internet to view "web pages" from a "web site." Generally, personal computers are equipped with a browser program, such as Internet Explorer or Netscape Navigator, to enable them to access information made available by numerous computer servers. As explained by the Court of Appeals in *Resonate Inc. v. Alteon Websystems Inc.,* 338 F.3d 1360, 1361-62 (Fed. Cir. 2003): "Web pages are stored on 'web sites,' locations on the World Wide Web comprising one or more computers, known as servers." *See also Akamai Technologies Inc. v. Cable & Wireless Internet*

*Services Inc.*, 344 F.3d 1186 (Fed. Cir. 2003) (generally discussing web page and server technology).

**B.  The CPA Direct Server System Is Located Outside the United States**

    **1.  CPA Direct Is Implemented by a Computer Server**



    **2.  All Hardware and Software Components of the CPA Direct Computer Server Are Located Outside the United States**



REDACTED



**3.    The CPA Direct Computer Server System Is Controlled and Used by CPA LP Outside the United States**

**C.    The Patented Invention Defined by Plaintiff's Claims Is Directed to a Computer Server, Not a Client Computer**

Plaintiff's three patents, namely, U.S. Patent Nos. 5,895,468 ("the '468 patent"), 6,049,801 ("the '801 patent"), and 6,182,078 ("the '078 patent"), are directed at allegedly new features of a computer server, instead of the client computer.  The last two patents, the '801 and

'078 patents, have essentially identical drawings and specifications.[3]  The claims, drawings,

specification, and prosecution history of all the patents focus on the capabilities of a computer

server, as described below.

The patents are directed at a computer server instead of a client computer because the

focus of plaintiff's patents is on a service provider.  As stated in the outset of the section in each

of plaintiff's patents setting forth a Summary of the Invention, "it is an object of the invention to

provide a device and method *for use by professionals* which improves the speed, efficiency, and

reliability of performing services for clients."  *See, e.g.*, '468 patent, col. 2, lines 16-19

(emphasis added).

All three patents include the following Figure 1, which shows a computer server system

10 on the left side of the drawing as a separate device from a client computer 20 on the right side

of the drawing.  System 10 includes a professional computer 12 with added features provided by

software, as well as a database 14:



FIG. 1

---

[3] These two patents were filed as "continuations-in-part" of the '468 patent because, while the entire '468 patent is essentially contained within these later patents, they also include additional information (namely, Figures 6 and 7 and accompanying text).

All of the patent drawings and specifications confirm that plaintiff's technical contribution, if any, is directed at the capabilities of a computer server instead of an ordinary client computer. Thus, all three patents indicate that an example of the claimed device and method "for automatically delivering professional services to a client" is system 10 shown in Fig. 1, ('468 patent, col. 3, line 16; '801 patent, col. 3, lines 52-53; '078 patent, col. 3, lines 38-39), an embodiment 30 of server system 10 shown in Fig. 2, ('468 patent, col. 4, lines 8-9; '801 patent, col. 4, lines 42-43; '078 patent, col. 4, lines 28-29), and another embodiment 48 of server system 10 shown in Fig. 3, ('468 patent, col. 5, lines 6-7; '801 patent, col. 5, lines 43-44; '078 patent, col. 5, lines 28-29). Similarly, the additional drawings and text contained in the '801 and 078 patents indicate that examples of plaintiff's claimed "web site", (see claims 1-16 of the '801 patent), are web site 72 including central computer 74 shown in Fig. 6, ('801 patent, col. 7, lines 21-22; '078 patent, col. 7, lines 5-6), and web site 88 including central computer 74' shown in Fig. 7, ('801 patent, col. 7, lines 63-67; '078 patent, col. 7, lines 47-51).

In every one of these examples, plaintiff consistently repeats the same pattern. The allegedly new system 10, 30, or 48 or new web site 72 or 88 provides services to but does not include client computer 20 or client computer 20', which is a completely separate device. As shown in Figure 6 from the '801 and '708 patents, web site 72 includes a central computer 74 with added features provided by software, as well as a database 14'. Web site 72 is a separate entity from client computer 20' on the right side of the drawing:



FIG. 6

Moreover, the only software described in any of the patent specifications that is later mentioned in the patent claims executes on processors that are part of the disclosed computer server systems, namely, professional computer 12, web server 56, (*see, e.g.*, '468 patent, Fig. 4), or central computers 74 and 74'. *See, e.g.*, '468 patent, col. 3, lines 19-21 (querying software); lines 30-32 (form generating software); lines 30-34 (form transmitting software); lines 46-48 (reply receiving software). The only software associated with a client computer that is specifically mentioned in the patent specifications is a web browser 60, (*see, e.g.*, '468 patent, col. 5, lines 43-44), which is a standard application found on personal computers. (Hives Decl. ¶¶ 7, 54.)

Analysis of plaintiff's claims confirms that the patented invention relates to a specific type of device, a computer server, as opposed to a client computer or an entire computer network. In every one of plaintiff's apparatus claims, for example, the patented subject matter is defined at the outset as a "device" or as a "web site." See independent apparatus claims 1, 5, and 9 of the 468 patent; independent claim 1 of the 801 patent; independent claims 1, 4, and 7 of the '078 patent. And this starting portion (also known as the preamble) of plaintiff's claims further

indicates that the patented device must be a computer server because it is "for automatically delivering [or providing] professional services," typically "to a client."

The subsequent portion, or body, of plaintiff's patent claims then lists a number of hardware and software features, each of which is a component of a computer server system. Consequently, plaintiff's patented invention is a computer server, which is completely separate from but able to communicate with one or more client computers.

For example, seven individual elements are listed in the body of apparatus claim 1 of the '468 patent. These elements include a "computer," a "database," and a "communication link" between the computer and the Internet, as well as four elements describing "software executing on said computer" that performs such functions as "querying" the database, "generating" a form, "automatically transmitting" the form to the client through the communication link, and "automatically receiving" a reply to the form from the client through the communication link.

Every one of the seven elements in claim 1 of the '468 patent relates to the features of a computer server that forms plaintiff's patented "device for automatically delivering professional services to a client." '468 patent, col. 6, line 56- col. 7, line 8. For example, the "computer" and "database" elements set forth in claim 1 of the '468 patent correspond to the professional computer 12 and docket database 14 shown in Figs. 1-3. And the "communication link" provides computer 12 with access to the Internet 18. Thus, each of these three elements is separate from client computer 20. Similarly, each of the four claimed software elements "executing on said computer" corresponds to computer programs running on professional computer 12. *See, e.g.*, '468 patent, col. 3, lines 19-21 (querying software); lines 30-32 (form generating software); lines 30-34 (form transmitting software); lines 46-48 (reply receiving

software).  None of the software elements performing these claimed functions are executing on client computer 20.

The prosecution history of the patents before the PTO confirms that plaintiff's patented invention is not directed at a client computer--which merely has the common features found on every personal computer with Internet access.  For example, during prosecution of the original application, the initial claims were rejected by the PTO as obvious over specific prior art references, including U.S. Patent No. 5,530,852 to Meske.  As shown in an earlier section of this brief, the prior art drawing in Fig. 2 of Meske shows a "client" computer 100 with a "browser" 200 having internet access 250.  Therefore, the prior art cited by the PTO contains as much detail about client computers as plaintiff's patents.

Instead, every patent claim relates to specific features of the database and software executing on a computer server, which constitutes plaintiff's claimed "device for automatically delivering professional services to a client."  Before granting the '468 and '801 patents, the PTO issued an Examiner's Statement of Reasons for Allowance explaining that features of the server's database and software distinguished plaintiff's claims.  "In the claimed invention, a *server* stores a plurality of reminders for a plurality of clients, and sends one of said reminders to a proper client when a particular condition is met and the time is appropriate."  *See, e.g.,* Examiner's Statement of Reasons for Allowance dated December 16, 1998, Application Serial No. 08/726,999 & Examiner's Statement of Reasons for Allowance dated July 23, 1999, Application Serial No. 09/237,521 (emphasis added).

And in responding to a rejection by the PTO of the claims, (Office Action dated Feb. 23 and Mar. 9, 1998), plaintiff's predecessor emphasized the features of the computer server and their importance to the service provider as follows:

- 11 -

Applicant's invention relates to a device for automatically delivering professional services to a client. The device includes a computer and a database containing a plurality of client reminders. Software executing on the computer automatically queries the database by date to retrieve a client reminder deadline, automatically generates a client response form based on the retrieved client reminder, and automatically transmits the client response form to the client through a communication link between the computer and the Internet. After the client completes the response form, the software executing on the computer automatically receives the reply to the response form from the client through the communication link.

* * *

The present invention as claimed, on the other hand, automates the actions themselves, thereby significantly reducing the human input required to effectuate, and improving the quality and reliability of, professional services.

*See* Response to Office Action dated June 8, 1998 at 1-3.

## III.    LEGAL ARGUMENT

### A.    Summary Judgment Is Appropriate Because Plaintiff's U.S. Patents Cannot Prohibit Activities Relating to CPA Direct in the United Kingdom

Summary judgment is appropriate in this case because CPA Direct, the only "product" accused of infringement in plaintiff's complaint, is located and controlled outside the United States.

# REDACTED

(Hives Decl. ¶¶ 31, 37.) Consequently, this Court can grant summary judgment for CPA because "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Congress has placed territorial limits on patents issued by the PTO. The keystone provision of the patent code, 35 U.S.C. § 154(a), indicates a patent's grant of a right to exclude others is restricted to specific activities in the United States. The Supreme Court has ruled that

the provisions of 35 U.S.C. § 271, which delineate the acts that constitute patent infringement, should be narrowly interpreted whenever a patentee, such as plaintiff here, seeks to interfere with activities abroad. *See, e.g., Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972):

> We would require a clear and certain signal from Congress before approving the position of a litigant who, as respondent here, argues that the beachhead of privilege is wider and the area of public use narrower, than courts had previously thought. . . . Our patent system makes no claim to extraterritorial effect, "these acts of Congress do not, and were not intended to, operate beyond the limits of the United States," *Brown v. Duchesne*, 19 How. 183, 195 (1856), and we correspondingly reject the claims of others to such control over our markets. Cf. *Boesch v. Graff*, 133 U.S. 697, 703 (1890). To the degree that the inventor needs protection in markets other than those of this country, the wording of 35 U.S.C. §§ 154 and 271 reveal a congressional intent to have him seek it abroad through patents secured in countries where his goods are being used.[4]

The Court of Appeals for the Federal Circuit has similarly interpreted 35 U.S.C. § 271 so that U.S. patents not have extraterritorial effect. As the Court stated in its recent decision in *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282 (Fed. Cir. 2005): "Section 271(a) is only actionable against patent infringement that occurs within the United States."

### B.    CPA Cannot Infringe Because Section 271 Defines Infringement as Requiring Specific Acts Performed in the United States

CPA cannot infringe because the only "product" accused of infringement in plaintiff's complaint, CPA Direct, is not now and has never been made, used, offered for sale, or sold within the United States, or imported into the United States. (Hives Decl. ¶¶ 31, 33, 36-38.) In order to infringe, CPA would have to perform at least one of the specific acts listed in 35 U.S.C. § 271. Every relevant subsection, including 3U.S.C. § 271(a), indicates prohibited activities must occur, at least in part, in the United States: "whoever without authority makes, uses, offers

---

[4] After the *Deepsouth* decision, Congress enacted 35 U.S.C. § 271(f) to prohibit the supply of the components from the United States that would be assembled abroad into the patented product. But the Federal Circuit has ruled that, "as to claims brought under § 271(a), *Deepsouth* remains good law: one may not be held liable under § 271(a) for 'making' or

(continued...)

to sell, or sells any patented invention, ***within the United States*** or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Plaintiff cannot point to acts of CPA in the United States that are relevant for purposes of § 271(a). Indeed, the claim for infringement in plaintiff's complaint, which otherwise parrots 35 U.S.C. § 271(a), conspicuously ignores this statutory requirement. According to plaintiff, the CPA defendants are infringing as a result of "making, selling, offering for sale, importing, and/or using its 'CPADirect' [sic] product and related products and services without the authorization of the Plaintiff WhitServe." First Amended Complaint § 10. But no allegation[5] is made, and none can be proven, that any actions supposedly relating to the accused CPA Direct system and plaintiff's patent claims were performed by CPA "within the United States."

### C.    No Prohibited Making, Selling, or Importing Under Section 271 Has Occurred in the United States



---

'selling' less than a complete invention." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000).
    [5] Solely for venue purposes, plaintiff alleges elsewhere that "Defendants sell infringing products in the District of Connecticut." First Amended Complaint § 6. But as stated at Hives Decl. ¶ 36, CPA has not "sold" the accused CPA Direct product anywhere--and certainly not in the United States.



**D.**   **No Prohibited Use of the Patented Invention Under Section 271 Has Occurred in the United States**



1.   **None of the Process Claims Are Infringed Since Every Step Is Not Performed in the United States**







2.      **None of the Apparatus Claims Are Infringed**





REDACTED











## IV.    CONCLUSION

The CPA Direct system, the only product accused of infringement in the complaint of

plaintiff, is located and controlled outside the United States.  As a result, and for reasons

explained above, there is no infringement of plaintiff's patents under 35 U.S.C. § 271.

Therefore, the CPA defendants respectfully ask this Court to grant summary judgment in

CPA's favor.

Respectfully submitted,

Dated:  November 15, 2005

Steven M. Anzalone, Esq.
Admitted Pro Hac Vice (phc0534)
*steven.anzalone@finnegan.com*
Esther H. Lim, Esq.
Admitted Pro Hac Vice (phc0535)
*esther.lim@finnegan.com*
Finnegan, Henderson, Farabow,
    Garrett & Dunner, LLP
901 New York Avenue
Washington, DC 20001-4413
Tel: 202-408-4000
Fax: 202-408-4400

Francis H. Morrison III (ct 04200)
*fhmorrison@dbh.com*
Matthew J. Becker (ct 10050)
*mjbecker@dbh.com*
James Mahanna (ct24681)
*jmahanna@dbh.com*
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)

Attorneys for Defendants,
COMPUTER PATENT ANNUITIES NORTH
AMERICA, LLC,
COMPUTER PATENT ANNUITIES LP.

- 26 -

## CERTIFICATE OF SERVICE

I, James Mahanna, hereby certify that on November 15, 2005, a true and correct copy of

the foregoing REDACTED MEMORANDUM OF LAW IN SUPPORT OF CPA'S MOTION

FOR SUMMARY JUDGMENT OF NONINFRINGEMENT was served by the indicated means

to the persons at the addresses listed:


**VIA U.S. MAIL:**


        Fritz L. Schweitzer III (ct26689)
        SCHWEITZER CORNMAN GROSS & BONDELL LLP
        292 Madison Avenue, 19th Floor
        New York, NY  10017
        Telephone (646)-424-0770
        Facsimile:  (646) 424-0880
        E-mail:  fls3rd@scgb-law.com


        By: _____
            James Mahanna